IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Northern Division*

| | |
|---|---|
| BRAVE MARITIME CORPORATION, INC.<br>Apollon Business Center<br>331 Kifissias Avenue<br>Athens, Greece<br><br>      Plaintiff<br><br>v.<br><br>GLOBAL MARKETING SYSTEMS, INC.<br>821 Bishop Walsh Road<br>Cumberland, Maryland 21502<br><br>      Defendant<br><br>**SERVE ON:**<br>Dr. Anil F. Sharma<br>821 Bishop Walsh Road<br>Cumberland, Maryland 21502 | *<br>*<br>*<br>*<br>* Civil Action No.:_____<br>*<br>*<br>*<br>*<br>*<br>* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT OF BRAVE MARITIME CORPORATION, INC.

Plaintiff BRAVE MARITIME CORPORATION, INC. (hereinafter "BRAVE" or "Plaintiff"), by and through its attorneys, Alexander M. Giles, Imran O. Shaukat, and Semmes, Bowen & Semmes, hereby files this Complaint against GLOBAL MARKETING SYSTEMS, INC. (hereinafter "GMS" or "Defendant"), and says as follows:

### PARTIES

1.   BRAVE is an incorporated company organized and existing under the laws of Liberia with an operating branch office established and based in Greece at Apollon Business Center, 331 Kifissias Avenue, Athens, Greece.

1

2. GMS is an incorporated company organized and existing under the laws of the State of Maryland with an office and principal place of business at 821 Bishop Walsh Road, Cumberland, Maryland 21502.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is founded on 28 U.S.C. §1332, as this is a suit between a citizen of a foreign country and a citizen of one of the United States, and the amount in controversy exceeds $75,000.00 (Seventy Five Thousand Dollars), exclusive of interest and costs.

4. The jurisdiction of this Court is also founded on 28 U.S.C. §1333, as this is an action for the enforcement of a maritime contract, i.e. an agreement to commit and employ in a joint maritime enterprise for mutual profit of the contracting parties vessels in navigation.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and (b).

## FACTUAL ALLEGATIONS

6. Beginning in the early Spring of 2014, Mr. Sultan Riaz Khan, who was at the time an advisor to the Projects and Finance Department of GMS, approached Plaintiff in order to introduce it to the President and CEO of Defendant, Anil F. Sharma, with the intention of bringing together BRAVE and GMS for the purpose of jointly pursuing a business enterprise in marine transportation for mutual profit.

7. The parties commenced discussions regarding the joint acquisition and operation of a fleet of handy-size dry cargo bulk carrier vessels with the idea of the new enterprise becoming the vehicle for an initial public offering of a new company to be listed on a U.S. stock exchange, in which the parties would hold substantial interests.

The discussions led to an initial Memorandum of Understanding of the parties, dated April 2, 2014, expressly designated by them as "non-binding" in which they respectively expressed their intentions concerning the proposed project. A copy of the April 2, 2014 Memorandum of Understanding is attached hereto as EXHIBIT 1.

8. Following the signature of the April 2, 2014 Memorandum of Understanding, the parties exchanged information, negotiated several particulars concerning the feasibility of the project, and finalized their negotiations in a written document which was signed by both parties on April 28, 2014. The document was signed by Mr. Panos Vafias, as attorney in fact for and on behalf of BRAVE, and by Mr. Anil Sharma as President and CEO for and on behalf of GMS. The April 28 document, headed "Final Recap," articulated the preliminary agreement of the parties which defined their common objective, i.e. to build a fleet of 7-12 vessels in a jointly owned enterprise, with the ultimate goal of launching an IPO and a publicly listed company. Unlike the April 2, 2014 Memorandum of Understanding, the April 28, 2014 Final Recap was not designated by the parties as "non-binding," but was intended by them as a fully binding contract defining their respective rights and obligations. A copy of the April 28, 2014 Final Recap is attached hereto as EXHIBIT 2.

9. Under the Final Recap, the parties agreed upon several mutual undertakings and entered into several stipulations, as follows: First, they defined the object of their mutual undertaking as building a fleet of 7-12 vessels prior to launching an initial public offering within the first year of business; Second, each party committed to contribute specific amounts of capital for funding of the project; Third, Brave bound itself to provide specifically named vessels – some already trading, and others in the

process of being built, as the initial operating fleet of the business; Fourth, to acquire one or more additional second-hand vessels to be inducted in the fleet of the business; Fifth, a mutually agreed timetable for the accomplishment of the objectives stated in the Final Recap; Sixth, mutual agreement upon values of the vessels that were going to comprise the initial fleet; Seventh, the respective debt to equity ratio and the shareholding interest that Defendant would acquire in the vessels in return for its contribution of funds to the business; Eighth, agreement on a number of principles to be followed in the management and operation of the new jointly-owned enterprise of the parties; Ninth, the formation of a contractual structure under which the respective parties would participate in the business through the different stages of its development, including control by majority of shareholders to be reflected in a shareholders' agreement which was to be adopted; Tenth, an agreement to work out among the parties as to the various details of their joint business undertaking, including the negotiation of specific contractual arrangements for the technical and commercial management of the fleet of vessels to be employed in the project, as well as a draft shareholders' agreement.

10.     Following the parties' signature of the Final Recap, which included the signature of the President and CEO of the Defendant, Anil F. Sharma, the parties negotiated various other agreements logically related to the principal preliminary agreement's implementation. The other agreements included a sale and purchase agreement, in respect of shares in the vessels to be sold to GMS as contemplated by the Final Recap, and a Joint Venture Agreement, which was the shareholders' agreement contemplated by the Final Recap. From May through November 2014, the parties exchanged correspondence with which they amended and modified the draft Joint

Venture Agreement ("shareholders' agreement" under the "Final Recap") and the other agreements ancillary to the Final Recap of April 28, 2014.

11. In the course of negotiating the Joint Venture Agreement, Defendant proposed Evita Investments, Ltd., a corporate business entity incorporated in the Marshall Islands as the legal entity that would hold as a nominee its interest in the Joint Venture of the parties.

12. The two actively trading vessels named in the Final Recap of April 28, 2014 (the motor vessels ECO CROSSFRIRE and ECO SPITFIRE (*See* EXHIBIT 2 at ¶ 3(d)), which Plaintiff intended and had agreed to transfer over to the contemplated joint venture, were mortgaged to the National Bank of Greece, and the respective shares of the companies that owned them were pledged to the National Bank of Greece as security documents. Consequently, Plaintiff requested the bank in September of 2014 for its consent to transfer to Defendant's nominee its proportionate number of the respective shares in the ship holding companies.

13. On or about November 20, 2014, Plaintiff advised Defendant that the National Bank of Greece, the lender that had financed BRAVE's purchase of the vessels ECO CROSSFRIRE and ECO SPITFIRE, had given its consent to the transfer to Defendant's nominee of its proportionate shares of stock in the respective ship holding companies, which owned the said vessels that had been pledged to the bank by Plaintiff as lender's security. At the same time, BRAVE invited GMS to coordinate for a mutually convenient time to meet and sign the Joint Venture Agreement and move forward with the implementation of the April 28, 2014 Final Recap and the payment of the agreed capital contribution of the Defendant, as there were no further outstanding

issues to be worked out among the parties for the implementation of the April 28, 2014 Final Recap.

14. On or about November 25, 2014 and on subsequent days, GMS responded by refusing to move forward with the signing of the Joint Venture Agreement or to render any performance of the April 28, 2014 contract of the parties. GMS specifically demanded renegotiation "in regard to asset pricing and some minor terms that will have to be amended in light of the prevailing circumstances," referring to the downward shift in vessel prices that had occurred since the signing of the Final Recap by both parties.

15. In subsequent correspondence between the parties and their respective legal representatives, Defendant denied that the parties had entered any contract whatsoever and insisted it was not bound by the April 28, 2014 Final Recap, thereby breaching, repudiating, and unilaterally terminating the same, by refusing to move forward with its implementation and performance.

16. At all times material hereto, under and by virtue of the April 28, 2014 contract of the parties, BRAVE was entitled to the contractually agreed payment of $20,000,000 (Twenty Million U.S. Dollars) from the Defendant, for Defendant's acquisition of its proportion of the shares in the ship holding companies which owned the following vessels: ECO CROSSFIRE, ECO SPITFIRE, TOPAZ 1, TOPAZ 2, AMETHYST 1, and AMETHYST 2.

17. As a result of Defendant's breach of the obligation to purchase for the agreed-upon price its proportion of the shares in the six vessels, Plaintiff sustained damages in an amount estimated to be U.S. $10,000,000 (Ten Million U.S. Dollars), representing the difference between the contract price of the said shares under the Final

Recap and the price Plaintiff would have been able to obtain from the sale of the same shares at the time of the breach.

18.     At all times material hereto, by virtue of the parties' mutual promises and undertakings under the April 28, 2014 Final Recap, BRAVE was bound and required to forego alternative opportunities for the profitable long-term time-chartered employment of the vessels ECO CROSSFIRE and ECO SPITFIRE, having bound itself to provide and commit these vessels to the business of the parties.

19.     At all times material hereto, by virtue of the parties' mutual promises and undertakings under the April 28, 2014 Final Recap, BRAVE was bound and required to forego alternative opportunities it had for time-chartering at a substantial profit of the vessels TOPAZ 1 and TOPAZ 2 which were under construction, and could have been chartered in advance of their completion and delivery, if Plaintiff had not committed them to the business of the parties.

20.     Plaintiff estimates it lost profits in the sum of U.S. $4,400,000 (Four Million Four Hundred Thousand U.S. Dollars) by foregoing the time-chartering of the vessels ECO CROSSFIRE, ECO SPITFIRE, TOPAZ 1, and TOPAZ 2, for a period of one year for each vessel, respectively.

21.     By reason of the Defendant's breach, Plaintiff has sustained damages in the total amount of U.S. $14,400,000.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BRAVE MARITIME CORPORATION, INC., respectfully prays that Defendant GLOBAL MARKETING SYSTEMS, INC. be served

7

with this Complaint and be summoned to appear and answer same, and that after due proceedings are had, that this Court enter judgment in favor of Plaintiff and against the Defendant in the sum of U.S. $14,400,000 (Fourteen Million Four Hundred Thousand U.S. Dollars) together with costs, pre-judgment and post-judgment interest, and such other and further relief that the Court deems just, equitable, and proper.

/s/ *[signature]*
Alexander M. Giles, Esquire
Federal Bar Number 25474
Imran O. Shaukat, Esquire
Federal Bar Number 30134
Semmes, Bowen & Semmes
25 S. Charles Street, Suite 1400
Baltimore, Maryland 21201
Phone: (410) 539-5040
Facsimile: (410) 539-5223
agiles@semmes.com
ishaukat@semmes.com

Of Counsel:

George A. Gaitas, Esquire
Briton Sparkman, Esquire
Chalos & Co., P.C.
7210 Tickner Street
Houston, Texas 77055

B1621435.DOC